UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 25-2766 JGB (JCx)** | Date | October 28, 2025 |
| Title | *Nam Su Hoang v. Ernesto Santa Cruz, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):          Attorney(s) Present for Defendant(s):

None                                                                      None

**Proceedings:** Order: (1) GRANTING Petitioner's Application for a Temporary Restraining Order (Dkt. No. 2) (IN CHAMBERS)

Before the Court is Petitioner Nam Su Hoang's ("Petitioner") ex parte application for an emergency temporary restraining order. ("TRO," Dkt. No. 2.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the TRO, the Court **GRANTS** the TRO.

## I. BACKGROUND

On October 17, 2025, Petitioner filed a petition for writ of habeas corpus. ("Petition," Dkt. No. 1.) That same day Petitioner filed the TRO. (See TRO.) The government ("Respondent") filed an opposition on October 18, 2025. ("Opposition," Dkt. No. 5.) Petitioner filed a reply on October 19, 2025. ("Reply," Dkt. No. 7.) This Court issued a minute order on October 20, 2025 enjoining the government from deporting Petitioner or transferring Petitioner outside of the jurisdiction of the Central District of California pending a ruling in this case. (Dkt. No. 8.)

//
//
//
//
//

## II. FACTS

Petitioner was born in Vietnam in 1972 and subsequently entered the United States as a refugee in 1980. (TRO at 3.) Petitioner entered the U.S. as an eight-year-old child with his parents. (Id.) Petitioner later became a lawful permanent resident of the U.S. (Id.) An immigration judge ordered Petitioner's removal to Vietnam on August 15, 2000. (Id.) After Petitioner's order of removal became final, he was held in immigration custody until June 18, 2001 when he was released pursuant to an order of supervision ("OSUP"). (Id. at 3-4.) His OSUP was renewed in 2008 and 2015. (Id. at 4.) Under his OSUP, Petitioner has started a family and worked to support his family. (Id.) Respondent has not been able to execute Petitioner's removal order due to a 2008 repatriation agreement with Vietnam prohibiting the removal of Vietnamese citizens who arrived to the U.S. prior to July 12, 1995. (Id. at 1.) Petitioner arrived to the U.S. prior to 1995 and Vietnam has never issued travel documents for Petitioner. (Id.)

Petitioner attempted to attend his check in appointment on June 13, 2025 at the Immigration and Customs Enforcement ("ICE") Los Angeles Office. (Id. at 4.) Petitioner could not access the ICE Los Angeles Office owing to the federal troop deployment, the closure of the exits to Downtown Los Angeles, and the curfew set in Los Angeles. (Id.) Petitioner returned home with plans to return in the future. (Id.) Petitioner assumed he could reschedule his appointment due to these exigent circumstances. (Id.) ICE officials arrested Petitioner at his house on October 3, 2025. (Id.) ICE officials informed Petitioner that they were revoking his OSUP and requesting travel documents from Vietnam for his removal. (Id.) ICE officials have detained Petitioner at the Desert View Annex detention facility. (Id. at 5.)

## III. LEGAL STANDARD

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tip in their favor.  Winter, 555 U.S. at 20.  Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).  Because both parties have had an opportunity to file briefs, the Court converts the TRO into a preliminary injunction.

### A.    Jurisdiction

Petitioner challenges his detention by ICE and seeks habeas relief pursuant to 28 U.S.C. § 2241.  (Petition ¶ 20.)  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody."  Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973).  Accordingly, the Court's habeas jurisdiction is properly invoked.

### B.    Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor."  Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020).  Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights. (TRO at 6.)  "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  Id. at 693.  As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'"  Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  Under 8 U.S.C. § 1231, the "post-removal-period detention statute," there are two permissible goals for post-removal detention: "preventing flight" and "protecting the community."  Id.  Because flight risk is attenuated where removal is not possible and indefinite detention on the basis of protecting the community is allowed under only limited circumstances, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  Id. at 699.  Otherwise, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem."  Id. at 690.

Furthermore, the Court has separately recognized that an individual on parole, which is analogous to an order of supervision, has a liberty interest under the Fourteenth Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrisey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interests arises even though a revocation of parole arises outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed parolees to a "preliminary hearing" to that guaranteed welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens under orders of supervision. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Finally, it is well-established that government agencies must follow their own regulations. Morton v. Ruiz, 415 U.S. 199, 235, 94 S. Ct. 1055, 1074, 39 L. Ed. 2d 270 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Here, the government has promulgated two regulations to govern orders of supervision. ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8. C.F.R. § 241.4(l)(2). ICE officials must provide an individual whom ICE decides to re-detain with a copy of the decision "with the reasons for the continued detention." 8 C.F.R. § 241.4(d). Subsequently, ICE must provide the noncitizen "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241(l)(1). Multiple courts have interpreted 8 C.F.R. § 241(l)(1) as requiring an informal interview when ICE revokes a noncitizen's order of supervision. See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands.").

Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose

removal period has expired and where there is not a significant likelihood of removal. Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001). ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). In the latter case, ICE must provide the noncitizen an "informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i)(3). Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.

Thus, the Court finds that under the Fifth Amendment's Due Process Clause Petitioner has a right to be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures. The government responds that there is now a significant likelihood of removal to Vietnam. (Opp. at 4.) The evidence the government proffers in support of that argument is that the "government is requesting [Petitioner's] travel documents. (Id.) However, the Court agrees with Petitioner that the government has not established that it is any more likely to acquire those travel documents than it has since it issued Petitioner's removal order in 2000. (Reply at 8-9.)

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[1] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, Courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor grows as a party remains out on bond for an extended period of time. Morrissey, 408 U.S. at 482. Here, Petitioner was released on an order of supervision for around 24 years before his re-detention and had been living with his wife, U.S. citizen children, and working to support his family. Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high with no process offered to Plaintiff during his re-detention and no rationale

---

[1] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

provided for his re-detention. This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose." Zadyvdas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017). Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here. The government's previous decision to release Petitioner on an OSUP demonstrates that the government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions." Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

## C.  Irreparable harm

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees." Hernandez, 872 F.3d 976, 995 (9th Cir. 2017). Petitioner's detention is impacting his ability to recover from the fall he suffered in detention, and he is unable to work to provide for his family. (Mot. at 9-10.) Therefore, Petitioner faces irreparable harm.

## D.  Balance of equities and public interest

Where the government is the opposing party, balancing of the equities and the public interest merge. See Nken v. Holder, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention." Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983). Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention, his child will remain without a parent, and his family will suffer significant financial

consequences.  Therefore, the Court, like many courts across the country, finds that the only reasonable relief is Petitioner's release.  See Grigorian, 2025 WL 2604573, at * 10 (collecting cases).

Furthermore, because of the same rights discussed above and the government's practice of deporting individuals to third countries without notice and in contravention of statute, the Court enjoins Respondent from removing Petitioner to a third country without proper notice.  See J.R. v. Bostock, No. 2:25-CV-01161-JNW, 2025 WL 1810210, at *4 (W.D. Wash. June 30, 2025) (granting an ex parte TRO preventing the government from deporting Plaintiff to a third-country); D.V.D. v. U.S. Dep't of Homeland Sec., 778 F. Supp. 3d 355, 389 (D. Mass. 2025) ("The Court finds it likely that Defendants have applied and will continue to apply the alleged policy of removing aliens to third countries without notice and an opportunity to be heard on fear-based claims—in other words, without due process.").

Due to the minimal harms suffered by the government, the Court will not require a security.

## V.   CONCLUSION

For the reasons described above, the Court **GRANTS** the preliminary injunction.  The Court **ORDERS** Respondent to immediately release Petitioner from their custody.

**IT IS SO ORDERED.**